# EXHIBIT B



K.C.R., a minor child, et al., Plaintiffs, v. COUNTY OF LOS ANGELES, et al., Defendants.

Case No. CV 13-3806 PSG (SSx)

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2014 U.S. Dist. LEXIS 98279*

**July 11, 2014, Decided
July 11, 2014, Filed**

**SUBSEQUENT HISTORY:** Request denied by *K.C.R. v. County of L.A.*, 2014 U.S. Dist. LEXIS 98276 (C.D. Cal., July 14, 2014)
Motion granted by, in part, Motion denied by, in part *K.C.R. v. County of L.A.*, 2014 U.S. Dist. LEXIS 98278 (C.D. Cal., July 14, 2014)

**CASE SUMMARY:**

**OVERVIEW:** HOLDINGS: [1]-The undersheriff would not be ordered to appear for deposition under *Fed. R. Civ. P. 26(c)* because he qualified as a former high-ranking government official, and plaintiffs failed to show how his information or knowledge was relevant to an officer's decision to shoot the victim.

**OUTCOME:** Motion denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Relevance*
[HN1] A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things. *Fed. R. Civ. P. 26(b)(1)*. Relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case. Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. The concept of relevance is different for purposes of discovery than for admissibility at trial.

*Civil Procedure > Discovery > Relevance*
*Civil Procedure > Discovery > Undue Burdens*
*Civil Procedure > Discovery > Protective Orders*
[HN2] The right to discovery, even plainly relevant discovery, is not limitless. A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled. The party resisting discovery bears the burden of demonstrating that its objections should be sustained.

Case 2:15-cv-09602-AB-AFM   Document 41-2   Filed 10/31/16   Page 3 of 10   Page ID #:192

Page 2
2014 U.S. Dist. LEXIS 98279, *

*Civil Procedure > Discovery > Protective Orders*
[HN3] Discovery seeking the deposition of high-level executives (so-called apex depositions) creates a tremendous potential for abuse or harassment that may require the court's intervention for the witness's protection under *Fed. R. Civ. P. 26(c)*. Heads of government agencies in particular are not normally subject to deposition absent extraordinary circumstances.

*Civil Procedure > Discovery > Protective Orders*
[HN4] Courts have interpreted *Fed. R. Civ. P. 26(c)* to impose limits on when a high-ranking government official may be subject to deposition.

*Civil Procedure > Discovery > Protective Orders*
[HN5] Current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances.

*Civil Procedure > Discovery > Protective Orders*
[HN6] High-ranking government officials enjoy limited immunity from deposition as they must be allowed the freedom to perform their tasks without the constant interference of the discovery process.

*Civil Procedure > Discovery > Protective Orders*
[HN7] Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office.

*Civil Procedure > Discovery > Protective Orders*
[HN8] Interests protected by the apex doctrine survive leaving office.

*Civil Procedure > Discovery > Protective Orders*
[HN9] The apex doctrine does not protect high-ranking officials from deposition in all circumstances. In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. The extraordinary circumstances test may be met where high-ranking officials have direct personal factual information pertaining to material issues in an action, and the information to be gained is not available through any other sources. An exception to this general rule against depositions of high ranking government officers exists concerning top officials who have direct personal factual information pertaining to material issues in an action and where the information to be gained is not available through any other source.

*Civil Procedure > Discovery > Protective Orders*
[HN10] When a high-ranking official is removed from the daily subjects of the litigation, and has no unique personal knowledge of the facts at issue, a deposition of the official is improper. Additionally, courts generally refuse to allow the immediate deposition of a high level executive before the testimony of lower level employees with more intimate knowledge of the case has been secured.

*Civil Procedure > Discovery > Protective Orders*
[HN11] Courts generally refuse to allow the immediate deposition of a high-level executive, the so-called apex deponents, before the depositions of lower level employees with more intimate knowledge of the case.

*Civil Procedure > Discovery > Protective Orders*
[HN12] While a party opposing a deposition carries a heavy burden to show why discovery should be denied, courts may protect high level corporate officers from depositions when the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive.

*Civil Rights Law > Immunity From Liability > Local Officials > Direct Causal Links*
*Civil Rights Law > Section 1983 Actions > Elements > Causal Relationship*
[HN13] Liability under *42 U.S.C.S. § 1983* requires a showing either that the defendant was personally involved in the constitutional deprivation or that a sufficient causal connection exists between the defendant's wrongful conduct and the constitutional deprivation.

*Civil Procedure > Discovery > Protective Orders*
[HN14] The purpose of the apex doctrine is both to protect the officials from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be

Case 2:15-cv-09602-AB-AFM   Document 41-2   Filed 10/31/16   Page 4 of 10   Page ID #:193

Page 3
2014 U.S. Dist. LEXIS 98279, *

named in lawsuits, and to protect the officials from unwarranted inquiries into their decision-making process.

*Civil Procedure > Discovery > Protective Orders*

[HN15] A sheriff is a high-ranking government official entitled to protection.

*Civil Procedure > Discovery > Protective Orders*

[HN16] Undersheriffs throughout the country have routinely been described in other contexts as high-ranking government officials.

*Civil Procedure > Discovery > Protective Orders*

[HN17] The apex doctrine applies not just to the heads of governmental units, but also to other top officials.

*Civil Procedure > Discovery > Protective Orders*

[HN18] Heads of agencies and other top government executives are normally not subject to deposition.

**COUNSEL:** **[*1]** For K. C. R. a minor child, individually and as successor in interest to decedent Kenneth Rivera III, by and through her natural mother Jessie Malpartida Wong, Plaintiff: Dale K Galipo, LEAD ATTORNEY, Dale K Galipo Law Offices, Woodland Hills, CA; Sonia M Mercado, LEAD ATTORNEY, Sonia Mercado & Associates, Culver City, CA; Thomas Carter Seabaugh, LEAD ATTORNEY, Law Offices of Dale K. Galipo, Woodland Hills, CA.

For K.R., a minor child, individually and as successor in interest to Decedent Kenneth Rivera III, by and through her natural mother Toya Downing, Estate of Kenneth Rivera, III, by and through its successor in interest K.R., Kenneth Rivera, Jr, Plaintiffs: Richard Samuel Paz, LEAD ATTORNEY, R Samuel Paz Law Offices, Culver City, CA.

For County of Los Angeles, Norma Silva, Defendants: Christopher Taewoo Kim, Dennis Michael Gonzales, Nathan A Oyster, Raymond W Sakai, Lawrence Beach Allen and Choi PC, Glendale, CA.

For Sheriff Leroy Baca, Undersheriff Paul Tanaka Defendants: Christopher Taewoo Kim Nathan A Oyster Lawrence Beach Allen and Choi PC, Glendale, CA.

For C.K.R., a Minor, by and through her natural mother, Jessie Malpartida Wong a Nominal Defendant, Defendant: Thomas Carter **[*2]** Seabaugh, LEAD ATTORNEY, Law Offices of Dale K. Galipo, Woodland Hills, CA.

For The Los Angeles County Sheriff's Department, Defendant: Paul B Beach, LEAD ATTORNEY, Christopher Taewoo Kim, Dennis Michael Gonzales, Nathan A Oyster, Lawrence Beach Allen and Choi PC, Glendale, CA.

**JUDGES:** SUZANNE H. SEGAL, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** SUZANNE H. SEGAL

**OPINION**

ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR AN ORDER REQUIRING DEFENDANT TANAKA TO APPEAR FOR DEPOSITION

  (Dkt. Nos. 91-92)

I.

**INTRODUCTION**

  On May 7, 2014, Defendants filed a "Motion for Protective Order Pursuant to *Federal Rule of Civil Procedure 26(c)* Barring the Deposition of Former High-Ranking Official Paul Tanaka." (Dkt. No. 67). On May 28, 2014, Plaintiffs filed an "Ex Parte Application to Shorten Time for Hearing Plaintiff K.R.'s Motion re Sufficiency of Defendant Tanaka's Objections to RFAs" ("Appl."). (Dkt. No. 70). On June 3, 2014, the Court held a hearing on the Motions, which the Court explained were intertwined to the extent that Plaintiffs' purported need to depose Tanaka depended in significant part on Tanaka's responses to written discovery. On June 5, 2014, the Court granted Plaintiffs' Ex Parte Application to Shorten Time, but denied **[*3]** without prejudice the underlying motion to compel supplemental RFA responses and Defendants' motion for protective order. (Dkt. No. 77). The Court also granted Plaintiffs an opportunity to propound additional, tailored discovery requests on Tanaka, stating:

  Plaintiffs are cautioned that if their

Case 2:15-cv-09602-AB-AFM   Document 41-2   Filed 10/31/16   Page 5 of 10   Page ID #:194

Page 4
2014 U.S. Dist. LEXIS 98279, *3

discovery requests are not specifically tailored to the kind of information Tanaka may be reasonably expected to have, the Court may find that Plaintiffs do not have a critical need for Tanaka's deposition because they cannot identify unique information material to the litigation likely to be in his possession. Defendants are cautioned that if Tanaka's responses and objections to written discovery appear intended to evade Tanaka's obligation, as a party to this case, to provide all the information that is required by the Federal Rules, the Court may find that a deposition is necessary.

(Id. at 15).

Pursuant to the Court's Order, on June 10, 2014, Plaintiffs lodged with the Court a copy of their Amended RFAs. (Dkt. No. 78). On June 25, 2014, Defendants lodged a copy of Tanaka's responses to the Amended RFAs. (Dkt. No. 83). On July 1, 2014, Defendants filed a "Status Report regarding Tanaka Discovery" [*4] in which they stated that "Defendants consider all discovery issues pertaining to Defendant Tanaka to be resolved without the need for his deposition or further involvement by the Court." (Dkt. No. 86 at 2). Also on July 1, 2014, Plaintiffs filed their Status Report, which they docketed as a "Motion to Take Deposition of Paul Tanaka." (Dkt. No. 91). On July 6, 2014, Plaintiffs filed a Notice of Errata in which they acknowledged that the inclusion of a hearing date on the caption of the July 1 Status Report was an error.[1](Dkt. No. 92 at 1). Despite this acknowledgment, however, Plaintiffs also stated that "in the interest of efficiency and since the Court has offered to that [sic] the parties could contact the Court by telephone; it is expedient for the Court to hear this matter [regarding discovery relating to Tanaka] on Tuesday, July 8, 2014, as it has been fully briefed." (Id. at 2). According to Plaintiffs, "the issue remains that Defendant Tanaka a) failed to provide competent responses to the [amended] discovery, and b) where he responds, the response indicates that he is the only person to have knowledge about the discovery propounded -- both responses indicating that his deposition [*5] is necessary." (Id.).

---

[1] Plaintiffs docketed their Notice of Errata as an "Amendment to Motion for Protective Order for Barring the Deposition of Former High-Ranking Official Paul Tanaka IN OPPOSITION [sic]." (Dkt. No. 92).

On July 8, 2014, the Court held a hearing. For the reasons stated below and at the hearing, Plaintiffs' renewed request for an order requiring Defendant Tanaka to appear for deposition is DENIED.

## II.

## BACKGROUND FACTS

On June 21, 2012, after a 911 call reported an attack on a teenage girl, Los Angeles County Sheriff's Department ("LASD") Deputy Norma Silva, who responded to the scene, shot and killed Kenneth Rivera as he was walking toward her patrol car. (Consolidated First Amended Complaint ("FAC"), Dkt. No. 60 at 7). Rivera's children and father subsequently brought the instant action for excessive force and wrongful death against the County of Los Angeles, and, in their individual capacity, Deputy Silva and former LASD Undersheriff Paul Tanaka. (Id. at 3). Plaintiffs contend that Tanaka wrongfully "encouraged deputies to use excessive or unreasonable force" and "threatened retaliatory investigations and discipline against captains and supervisors who attempted to investigate [*6] deputy misconduct." (Id. at 18). In particular, Plaintiffs allege that Tanaka gave a speech at Century Station, where Silva would later be based, in which he encouraged deputies to "'function right to the edge of the line' and be very aggressive in using force against citizens." (Id. at 14).

## III.

## STANDARDS

### A. Scope Of Permissible Discovery

[HN1] A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense --including the existence, description, nature, custody, condition, and location of any documents or other tangible things." *Fed. R. Civ. P. 26(b)(1)*. Relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any issue that is or may be in the case." *Chavez v. Daimler Chrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002)* (internal quotations omitted). Even when information is not directly related to the

claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Sanyo Laser Prods. Inc. v. Arista Records, Inc., 214 F.R.D. 496, 502 (S.D. Ind. 2003)*; see also *E.E.O.C. v. Jewel Food Stores, Inc., 231 F.R.D. 343, 349-50 (N.D. Ill. 2005)* [*7] ("[T]he concept of relevance is different for purposes of discovery than for admissibility at trial . . . .").

However, [HN2] the right to discovery, even plainly relevant discovery, is not limitless. "A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *Favale v. Roman Catholic Diocese of Bridgeport, 235 F.R.D. 553, 558 (D. Conn. 2006)* (internal quotation marks omitted). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." Id. (internal quotation marks omitted). The party resisting discovery bears the burden of demonstrating that its objections should be sustained. Id.

**B. Apex Depositions**

Courts have often observed that [HN3] discovery seeking the deposition of high-level executives (so-called "apex" depositions) creates "a tremendous [*8] potential for abuse or harassment" that may require the court's intervention for the witness's protection under *Rule 26(c)*. *Apple, Inc. v. Samsung Elecs. Co., Ltd., 282 F.R.D. 259, 263 (N.D. Cal. 2012)* (internal quotation marks omitted). Heads of government agencies in particular "are not normally subject to deposition" absent extraordinary circumstances. *Green v. Baca, 226 F.R.D. 624, 648 (C.D. Cal. 2005)* (quoting *Kyle Eng. Co. v. Kleppe, 600 F.2d 226, 231-32 (9th Cir. 1979)*, and collecting cases); see also *Jameson v. Oakland County, 2011 U.S. Dist. LEXIS 6312, 2011 WL 219555 at *1 (E.D. Mich. Jan. 24, 2011)* ([HN4] "Courts have interpreted *Rule 26(c)* to impose limits on when a high-ranking government official may be subject to deposition."); *United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 316 (D. N.J. 2009)* ("There is wide agreement among the Circuits that [HN5] current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances."); *Warzon v. Drew, 155 F.R.D. 183, 185 (E.D. Wis. 1994)* ([HN6] high-ranking government officials enjoy limited immunity from deposition as they "must be allowed the freedom to perform their tasks without the constant interference [*9] of the discovery process"). [HN7] Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office. See *Gauthier v. Union Pacific R. Co., 2008 U.S. Dist. LEXIS 47199, 2008 WL 2467016 at *4 (E.D. Tex. June 18, 2008)* (quashing deposition of former CEO where party seeking discovery had not yet deposed 30(b)(6) witness); *Sargent v. City of Seattle, 2013 U.S. Dist. LEXIS 65356, 2013 WL 1898213 at * (W.D. Wash. May 7, 2013)* ([HN8] interests protected by apex doctrine "survive[] leaving office").

[HN9] The apex doctrine does not, however, protect high-ranking officials from deposition in all circumstances. "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc., 282 F.R.D. at 263* (internal quotation marks omitted); see also *Coleman v. Schwarzenegger, 2008 U.S. Dist. LEXIS 70224, 2008 WL 4300437 at *2 (E.D. Cal. Sept. 15, 2008)* ("The extraordinary circumstances test may be met where high-ranking officials 'have direct personal factual information pertaining to material issues in an action,' and 'the information to be gained [*10] is not available through any other sources[.]'") (quoting *Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007))*; *Church of Scientology of Boston v. I.R.S., 138 F.R.D. 9, 12 (D. Mass. 1990)* ("An exception to this general rule [against depositions of high ranking government officers] exists concerning top officials who have direct personal factual information pertaining to material issues in an action . . . [and] where the information to be gained . . . is not available through any other source.").

In contrast, [HN10] when a high-ranking official is "removed from the daily subjects of the litigation, [and] has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 U.S. Dist. LEXIS 8295, 2007 WL 205067 at *3 (N.D. Cal. Jan. 25, 2007)* (internal quotation marks omitted). Additionally, "courts

generally refuse to allow the immediate deposition of a high level executive . . . before the testimony of lower level employees with more intimate knowledge of the case has been secured." *Google Inc. v. Am. Blind & Wallpaper Factory, Inc., 2006 U.S. Dist. LEXIS 67284, 2006 WL 2578277 at *3 n.3 (N.D. Cal. Sept. 6, 2006)*; see also *Mehmet v. PayPal, Inc., 2009 U.S. Dist. LEXIS 29846, 2009 WL 921637 at *2 (N.D. Cal. Apr. 3, 2009)* [*11] ([HN11] "[Courts] generally refuse to allow the immediate deposition of a high-level executive, the so-called 'apex deponents,' before the depositions of lower level employees with more intimate knowledge of the case.") (emphasis in original). In sum, [HN12] while a party opposing a deposition "carries a heavy burden to show why discovery should be denied," courts may "protect high level corporate officers from depositions when the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive." *Google, Inc., 2006 U.S. Dist. LEXIS 67284, 2006 WL 2578277 at *3 n.3* (internal quotation marks omitted).

**IV.**

**DISCUSSION**

This case involves a single officer shooting, which, as counsel for Plaintiffs conceded at the hearing, was the first and only time Defendant Silva has ever shot a suspect. Tanaka's value as a witness, i.e., whether he can reasonably be expected to have relevant, unique information, depends on whether the culture of violence against civilians that Tanaka purportedly fostered was a causal factor in Silva's decision to shoot Rivera. See *Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)* ([HN13] liability under *§ 1983* requires a showing either that the defendant was personally [*12] involved in the constitutional deprivation or that a "sufficient causal connection" exists between the defendant's wrongful conduct and the constitutional deprivation). Here, according to Plaintiffs, Tanaka's alleged wrongful conduct is his encouragement of a culture of excessive force, particularly at the Century Station where he worked in the 1990s. However, Plaintiffs must show at least some evidence of a causal connection between Tanaka's alleged wrongful conduct and Silva's shooting of Rivera in 2012, before Tanaka's deposition may proceed.

As further explained below, Plaintiffs have made no showing to this Court, on the current record, that there is any connection between Tanaka's purported encouragement of violence and Silva's decision to shoot Rivera. Accordingly, Plaintiffs have failed to show that Tanaka will have any information, much less unique information, that is relevant to how and why Silva shot Rivera. Accordingly, Plaintiffs' renewed motion for an Order requiring Tanaka to appear for deposition is DENIED.

As a preliminary matter, the Court finds that Tanaka qualifies as a former high-ranking government official. As Undersheriff, Tanaka was second in command at the [*13] LASD, which has been recognized as the largest sheriff's department in the nation. *Starr v. County of Los Angeles, 659 F.3d 850, 854 (9th Cir. 2011)*. [HN14] The purpose of the apex doctrine is both "to protect the officials from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits," and "to protect the officials from unwarranted inquiries into their decision-making process." *Coleman, 2008 U.S. Dist. LEXIS 70224, 2008 WL 4300437 at *2*; see also *Gray v. Kohl, 2008 U.S. Dist. LEXIS 32615, 2008 WL 1803643 at *1 (S.D. Fla. Apr. 21, 2008)* (Sheriff of Monroe County, Florida "is entitled to the heightened protection from discovery often afforded to high ranking officials" because "he is likely to be subjected to numerous, repetitive and abusive depositions concerning matters of which he has no personal knowledge"). As a very visible official of a large governmental agency, Tanaka is vulnerable to suit by anyone challenging LASD policies and practices, even when he may not have any personal knowledge of the underlying facts of a particular case. Therefore, the apex doctrine's goals are furthered by recognizing the Undersheriff of Los Angeles County as a high-ranking [*14] government official.

The Court is aware that one Central District decision questioned whether the Sheriff of the LASD is a high-ranking government official for purposes of the apex doctrine analysis. See *Green, 226 F.R.D. at 649* (noting that "at least one court has suggested that police chiefs, and presumably sheriffs as well, do not constitute high government officials") (citing *Detoy v. City and County of San Francisco, 196 F.R.D. 362, 369-70 (N.D. Cal. 2000))*. However, *Green* did not rest on an affirmative finding that the LASD Sheriff was not a high-ranking official and is not dispositive here. First, even though the decision in Green noted the possibility that a county sheriff might not qualify for apex doctrine

protection, the reason why the court allowed the sheriff's deposition to go forward -- his "personal knowledge of the relevant facts" -- relied on the factors a court must consider under the apex doctrine in deciding whether to allow the deposition of a high-ranking official. *Green, 226 F.R.D. at 650*; see also *Jarbo v. County of Orange, 2010 U.S. Dist. LEXIS 142915, 2010 WL 3584440 at *2 (C.D. Cal. Aug. 30, 2010)* (noting that the Green court "appears to have applied the law . . . concerning high-ranking [*15] government officials"). Second, the rationale of the case the Green court relied on, Detoy, has itself been called into question. See *Jarbo, 2010 U.S. Dist. LEXIS 142915, 2010 WL 358440 at *2 n.1* (noting that the Detoy court's conclusion, which rested on a finding that some police chiefs had been deposed "without any special showing," failed to consider whether the depositions were formally objected to, and, if they were, whether the depositions were allowed because of the "existence of extraordinary circumstances").

Third, the Green court noted the lack of authority specifically addressing whether a county sheriff is a high-ranking official. *Green, 226 F.R.D. at 649*. Green was decided in 2005 and ample authority since that date supports the proposition that [HN15] a sheriff is a high-ranking government official entitled to protection. See *Jarbo, 2010 U.S. Dist. LEXIS 142915, 2010 WL 3584440 at *2* ("Accordingly, on the basis of the persuasive authority discussed above and the Court's understanding of the duties and responsibilities of the Sheriff of Orange County, the Court concludes that the Sheriff of Orange County is a high-ranking official."); see also *Avalos v. Baca, 2006 U.S. Dist. LEXIS 79376, 2006 WL 6220447 at *2 (C.D. Cal. Oct. 16, 2006)* (deposition of Sheriff Baca not [*16] warranted where plaintiff failed to show that the deposition "fits within the narrow exception to the rule that litigants should ordinarily be required to depose those individuals with the most relevant knowledge of the facts before taking the depositions of high ranking government officials"); *Jameson, 2011 U.S. Dist. LEXIS 6312, 2011 WL 219555 at *2* ("Sheriff Bouchard is a high-ranking governmental official, and therefore Plaintiff must exhaust other avenues for obtaining the information sought before deposing Sheriff Bouchard."); *Slone v. Judd, 2011 U.S. Dist. LEXIS 48039, 2011 WL 1584421 at *1 (M.D. Fla. Apr. 26, 2011)* (Polk County, Florida Sheriff high-ranking official); *Clark v. Keen, 2009 U.S. Dist. LEXIS 4808, 2009 WL 179674 (M.D. Fla. Jan. 23, 2009)* (DeSoto County, Florida Sheriff high-ranking official);

*Moyle v. Anderson, 2008 U.S. Dist. LEXIS 81966, 2008 WL 4613751 at *7 (D. Minn. Oct. 15, 2008)* (Sheriff and certain other county employees "are high-ranking officials"); *Sargent, 2013 U.S. Dist. LEXIS 65356, 2013 WL 1898213 at *3* (City of Seattle, Washington Police Chief high-ranking official); *Arizmendi v. City of San Jose, 2010 U.S. Dist. LEXIS 145082, 2010 WL 1459867 at *2-3 (N.D. Cal. Apr. 7, 2010)* (City of San Jose, California Police Chief high-ranking official).

The fact that Tanaka was the Undersheriff of Los Angeles County and not [*17] the Sheriff does not necessarily exclude Tanaka from the protections of the apex doctrine. The Court notes that Tanaka and other [HN16] Undersheriffs throughout the country have routinely been described in other contexts as "high-ranking government officials." See *Alvarado v. Bratton, 2009 U.S. Dist. LEXIS 113597, 2009 WL 3963840 at *1* (describing Tanaka as a "high-ranking official[] within LASD"); *Mehl v. Blanas, 241 F.R.D. 653, 662 (E.D. Cal. 2007)* (referring to Undersheriff as a "high-ranking Sheriff's Department official[]"); *Young v. County of Cook, 616 F. Supp. 2d 834, (N.D. Ill. 2009)* (Sheriff and certain direct reports "were all high-ranking officials in the Sheriff's office").

The Court recognizes that in cases specifically applying the apex doctrine, there is conflicting authority as to whether or not the second in command of a law enforcement agency falls within the scope of the doctrine's protections. Compare *Holguin v. County of Los Angeles, 2011 U.S. Dist. LEXIS 153058, 2011 WL 7128640 at *3 (C.D. Cal. Oct. 12, 2011)* (allowing Tanaka's deposition to go forward because as Undersheriff, he was not the "head" of a government agency, and because he had information relevant to plaintiff's claims) with *Spadaro v. City of Miramar, 2012 U.S. Dist. LEXIS 117925, 2012 WL 3614202 at *3 (S.D. Fla. Aug. 21, 2012)* [*18] (City of Miramar, Florida Chief of Police and Assistant Chief of Police are both high-ranking officials whose depositions are prohibited absent extraordinary circumstances). However, the weight of authority suggests that [HN17] the apex doctrine applies not just to the heads of governmental units, but also to other top officials. See *Avalos, 2006 U.S. Dist. LEXIS 79376, 2006 WL 6220447 at *1* ([HN18] "Heads of agencies and other top government executives are normally not subject to deposition.") (emphasis added); *Coleman, 2008 U.S. Dist. LEXIS 70224, 2008 WL 4300437 at *4* (Governor and

Governor's Chief of Staff are high-ranking officials to whom apex doctrine applies. In light of (1) the size of the LASD and its hierarchical structure, (2) Tanaka's key role, as Plaintiffs allege, in setting and enforcing LASD policies and practices, and (3) the significant risk that Tanaka would be called to testify in innumerable suits brought by inmates and civilians with grievances against the LASD, whether or not he had personal knowledge of the facts of the case, the Court concludes that Tanaka is sufficiently high-ranking to warrant the protections of the apex doctrine.

Having found that Tanaka qualifies as a high-ranking government official, the Court must also consider [*19] whether any "extraordinary circumstances" exist that would warrant an exception to the apex doctrine. It is undisputed that Tanaka does not have first-hand knowledge of the specific shooting at issue in this case. Tanaka was not present at the scene, and Plaintiffs do not allege that he had any role in any internal investigation related to the shooting. Indeed, on the current record before the Magistrate Judge, Plaintiffs have not shown that there is any connection at all between Tanaka and Silva. Tanaka was not Silva's immediate supervisor, nor have Plaintiffs offered any evidence showing that Silva ever worked directly with Tanaka in any capacity. Plaintiffs' counsel admitted that Tanaka was not even stationed at Century Station for at least eight years, and possibly more, by the time Silva was stationed there in 2008, and for well more than a decade by the time that Silva shot Rivera in 2012. According to Plaintiffs' counsel, even Tanaka's speech at Century Station, where he allegedly encouraged deputies to "function right to the edge of the line," took place six months before Silva arrived. (Id. at 14). Plaintiffs have not yet brought to the Court's attention any evidence clearly [*20] implicating Tanaka in the creation or continuation of a culture of violence at the Century Station during Silva's tenure.

More fundamentally, at least at this stage of the case, Plaintiffs have not shown that Silva was at all influenced by a culture of violence when she shot Rivera, even if Tanaka had a role in fostering it. Plaintiffs' counsel contended at the hearing that Tanaka was a member or sympathizer of a racist deputy gang called the "Vikings," which now goes by the name the "Regulators." However, even if Plaintiffs were able to prove their allegations about Tanaka, Plaintiffs have offered no evidence, despite having had the opportunity in written discovery and depositions to develop it, that Silva is a member or sympathizer of the "Regulators" or any other gang. Therefore, whatever knowledge Tanaka may have about deputy gangs, or his own participation in a civilian violence, does not appear relevant to Silva's decision to shoot Rivera.

The Court's analysis of the relevancy of Tanaka's anticipated testimony about a culture of violence at the LASD might reach a different conclusion if Silva had a documented history of violence or demonstrable ties to a deputy gang. This, however, [*21] is not such a case. According to the record presently before the Court, Silva does not have a history of violence against civilians, has no known gang ties, and has directly participated in only one shooting, i.e., the Rivera shooting, in her entire career (although she has "responded" to other shootings). Because Plaintiffs have failed to show how Tanaka's information or knowledge is relevant to Silva's decision to shoot Rivera, Plaintiffs have failed to show that Tanaka has "unique or superior knowledge" necessary to warrant the deposition of a high-ranking government official. See *Chick-Fil-A, Inc. v. CFT Development, LLC, 2009 U.S. Dist. LEXIS 34496, 2009 WL 928226 at *3 (M.D. Fla. Apr. 03, 2009)* (denying motion to compel deposition of high-level executive where requesting party "failed to convince the Court that [the executive] possesses any unique or superior knowledge concerning any information which is relevant and material to the issues in this case") (emphasis added); *Affinity Labs of Texas v. Apple, Inc., 2011 U.S. Dist. LEXIS 53649, 2011 WL 1753982 at *1 (N.D. Cal. May 09, 2011)* (granting motion for protective order where party seeking to depose Steve Jobs "fail[ed] to show that Jobs possesses unique, personal non-repetitive firsthand [*22] knowledge of relevant facts") (emphasis added); *Synthes USA, LLC v. Spinal Kinetics, Inc., 2011 U.S. Dist. LEXIS 27031, 2011 WL 811731 at *2 (N.D. Cal. March 02, 2011)* (denying motion to compel deposition of CEO where requesting party failed to make a "solid, detailed showing" that the witness "has unique and non-repetitive relevant knowledge that cannot be obtained from other sources") (emphasis added). The Court notes that this action is still in the discovery stage and that it is possible Plaintiffs may develop facts about the shooting or Silva that would cause the Court to reconsider whether Tanaka has unique, relevant knowledge. However, no such showing has been made thus far. On the current record, Tanaka's deposition is not warranted.

**V.**

**CONCLUSION**

Accordingly, Plaintiffs' renewed motion for an Order compelling the deposition of Tanaka is DENIED.

IT IS SO ORDERED.

DATED: July 11, 2014

/s/ SUZANNE H. SEGAL

UNITED STATES MAGISTRATE JUDGE